Caer, J.
The circuit court unquestionably erred in refusing to instruct the jury, that the sureties of the executor were not bound to make good the proceeds of land sold by their principal. This court, after the fullest investigation, has settled the law on that subject, in Jones v. Hobson. There was another point argued at the bar; whether Bruce fy Sydnor could as assignees of Mrs. Davis, a legatee, sustain an action, in the character of relators, on the bond of the executor? I have felt some doubt as to this; but, from thé reason and analogies of the law, am led to conclude, that they cannot. We have decided in Tolson v. Elwes, that where A. obtains a judgement, and the execution is indorsed for the benefit of B. he cannot make a motion in his own name against the sheriff, for a default, in the service and return of the writ. We have also decided in Meze v. Howver, that where an execution in the name of A. is indorsed for the benefit of B. if the sheriff levy it, and take a forthcoming bond payable to B. such bond is naught and will be quashed. These cases were decided on the particular words of the law ; but the general proposition was also taken, that in no proceeding to carry a judgement or execution into effect, can the name of the transferree be *93 substituted for that of the plaintiff on the record. The law requires bond and security of executors for the safety of creditors and legatees alone; but neither of these can sue upon the bond, till they have established their demand against the executor by judgement or decree. To enforce this judgement or decree,the bond may be put in suit; but can it be at the relation of any but the plaintiff on the record ? I think not. The words of the law are broad ; “ the bond may be put in suit and prosecuted, by and at the costs of any party injured by the breach thereof:’’'’ still, as the bond is given for the benefit of creditors and legatees alone, they seem to be the parties meant by the law. A creditor by bond or other assignable paper, may it is true, by assigning it, place his assignee in his shoes ; but a legacy, decree or judgement, is not assignable at law. I do not think, therefore, that the legatee in this case, could by her assignment, enable Bruce if Sydnor to sustain this action on the bond, as relators.
Cabell and Brooke, J. concurred.
Tücker, P.
The first error assigned in this case by the appellants is, that Bruce if Sydnor, the relators, who claim as assignees of a decree in favour of S. Davis, one of the legatees of John Davis deceased, were not proper relators; that the suit upon the executor’s bond for the amount of the decree, should have been at the relation of the legatee, and not of her assignees. I am of opinion, that this objection is a valid one. The language of the statute is indeed very broad; that “ the bond may be put in suit by any party injured by the breach thereof.” But oven this broad provision may be satisfied by conceding to those who have legal claims, a right to put them in suit at law, and to those who have equitable claims, a right to sue in equity. Or, it may be satisfied by conceding, that persons standing in the relation of Bruce if Sydnor to the case, may sue even at law, in the name of the justices, upon the relation of their as *94 signor, and for their own use. If, however, this may seem too nice and technical, I am willing to place the matter upon the more liberal ground of the real meaning of the statute, and the mischiefs and embarrassments, which would proceed from lhe adoption of a different construction. The statute then, prescribes that any party injured by a breach of the bond may put it in suit. The question still recurs, who is to be considered a party injured ? and how is the fact to be ascertained, that the suitor comes within that description? Now, it is agreed, on all hands, that no suit can be maintained upon the bond until the party sueing has first established his claim against the estate, if he is a creditor, by the judgement of some court of justice, or if he is a legatee, by the decree of a court of chancery, or the judgement of a court of law upon the express assumpsit of the executor. It is believed, that the records of our courts furnish no instance of an attempt to sue on the bond, until the party has established his demand by a previous judicial proceeding. Indeed it cannot be. The action for a devastavit never could be maintained, until there was a previous judgement against the executor establishing the demand, and the action on the bond could only have been sustained, until within a few years past, after a judgement for a devastavit. And even now, the law expressly requires a previous judgement for the demand, and a return of nulla bona, before a suit can be sustained upon the bond. I think, therefore, we may safely affirm, that the party injured must have established his right to sue, and the fact of his falling within the description of the statute, by some previous judicial proceeding, before he can be entitled to be a relator in an action upon an executor’s bond. It may be said, that the demand in this case has been established by a judicial proceeding, and the requisitions of the statute thereby satisfied. But how has the connexion of Bruce fy Sydnor with that demand, been established ? Had S. Davis been the relator, and the action been indorsed for their use, every thing would have been right. She would have had a legal title *95 to recover, founded upon the actual decree in her favour of a court of record of the highest authority; and the rights of her equitable assignees would have been secured by the indorsement. The defendant upon the service of the process (which is a demand in law) would have seen that that demand was the demand of an ascertained creditor, and might have satisfied it forthwith. But, as the suit is now brought, various principles of the law are set at naught. Persons having equitable interests are found asserting those interests in a legal tribunal, instead of filing their bill in equity upon the foot of the former decree, and seeking to enforce its provisions against principal and sureties, in the mode so familiar to the profession in that court. Invasions of the jurisdiction of courts of law by the courts of equity, about which we are so sensitive, are not more mischievous than many invasions of the jurisdiction of equity would be. This among others would be attended with great inconvenience. If the assignees, Bruce Sydnor, had sued in equity, S'. Davis, their assignor, would have been a necessary party. The question of assignment or no assignment, could there have been definitively settled, in the cause between Bruce &f Sydnor, S. Davis, and the executor. But in the action at law, though the defendants should have pleaded no assignment from S. D. to the relators, no verdict could have been given, which could have protected them against a future claim on her part, if she should be able to negative the authenticity of the assignment, or to shew some subsisting equity or discount against her assignees. Let me add too, that the want of privity between themselves and the defendants, leads, I think, to another consequence, inconsistent with legal principles. In the theory of the law, the writ itself is a demand of the debt from the defendant. Upon the service of the writ, if he knows the demand to be just, he may discharge it forthwith. It is proper, then, that he who sues him should be known as a creditor; but this cannot be where the relator in the cause is an equitable assignee, unknown to himself, and not recognized by a court of law. *96 I am of opinion, therefore,, that this defect in the action is fatal.
The next error assigned is, that there is no averment in the declaration, that assets to the value of the debt ever came to the hands of the executor. I think this also a sound objection to the declaration. The question here, it will be observed, does not arise after a verdict. We are considering it upon the general demurrer filed in the court below to the declaration. The statute of jeofails is, therefore, out of the question, except the clause which declares that, upon general demurrer, the court shall only regard such errors as are specially assigned, “ unless something so' essential to the action or defence as that judgement according to law and the very right of the cause cannot he given, be omitted.” That there is no averment in the declaration, that assets to the value of the debt, or indeed any assets, came to the hands of the executor, appears from the most rigorous examination. It remains then only to inquire, whether this averment be so essential to the action, as that judgement could not be given according to law and the very right of the cause? I think it was. The matters which go to make up the right of action, in cases of this description, are threefold; 1. an ascertained demand against the estate; 2. assets in the hands of the executor; and 3. the return of the sheriff, that no such assets can be had to satisfy the execution. It cannot be denied, that upon the trial, these three things must be shewn in order to establish a breach of the condition of the bond. The necessity of proof of assets is obvious, from the consideration, that if no assets were received, there could be no breach by devastavit; and the necessity of establishing by proof the amount of assets,’is also clear, because it has been repeatedly decided, that the jury must find either sufficient assets or the amount of assets. Sturdivant v. Raines, 1 Leigh, 481. Gardner’s adm’r v. Vidal, 6 Rand. 106. This, then, is obviously one of the most essential ingredients in the action. It may safely be called, indeed, the very gist of the action. And if it be
*97 the important inquiry before the jury on the trial of the plea of plene administravit, or conditions performed, it is not less important in the case of a demurrer. For it must be remembered, t.hat upon overruling the demurrer of the defendant to the plaintiff’s declaration, peremptory judgement is pronounced against him for the plaintiff’s demand. If, therefore, the declaration omit what is essential to constitute a right of action, it is impossible to give such judgement without palpable injustice. For, though the demurrer admits what is set forth in the declaration, it does not admit what is not; and hence it is that (sweeping as are the provisions of our statute of jeofails) they reach no case of a demurrer for matter of substance. Much, indeed, may be cured by a verdict; but no errors, except those of mere form, are protected from the effect of a demurrer. A further consideration may illustrate the essential character of an averment of assets, in order to enable the court to pronounce judgement. Even a verdict for the plaintiff for his demand will not justify a judgement of the court, unless that verdict expressly finds a sufficiency of assets, or the amount of the assets, so as to enable the court to graduate thereby its own judgement. How, then, can the court give judgement according to law and the very right of the case, when, so far from knowing the amount or sufficiency of the assets, it does not even know from the plaintiff’s own declaration, that the defendant ever received any assets at all ? I cannot perceive. I therefore conclude, that on this point also, there is error in the judgement of the court below.
The third objection relied upon, arises on the bill of exceptions ; the court refusing to instruct the jury, that the securities of the executor were not bound for the proceeds of the land sold under John Davis’s will. This decision is in conflict with the case of Jones v. Hobson, and is therefore erroneous.
Judgement reversed, and judgement entered on the demurrer, for the defendants.